

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Joe P. Flack
County Attorney
Menard County
Menard, Texas

Dear Sir:

Opinion No. 0-7345
Re: Authority of county to
lease county-owned land
to private association.

We have your opinion request of August 6, 1946, from which we quote as follows:

"At the request of an association of persons known as The Menard Country Club, also the County Judge of Menard County, Hon. T. C. Thixton, they have asked me to secure an opinion from your department, as to whether or not Menard County, acting through its Commissioner's Court, to make a valid lease to the said club, and at the request of the County Judge, I am enclosing you a deed conveying twenty-five acres of land, to Menard County.

"Article 1577 of the Revised Statutes of the State of Texas, provides that a county can sell and dispose of real estate by complying with this Article and I suppose if they can sell same, they could, also, make a valid lease, also, Article 2824 provides that each county may sell or dispose of lands granted to it, known as School Land, and Article 2824A, can, also, lease School Land. I suppose Menard Country Club will want a lease for a period of twenty or thirty years, as I understand, if they secure the lease, they will erect a club house and other valuable improvements of said twenty-five acres.

"Please advise me, or the County Judge, whether

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Joe P. Flack, page 2

or not Menard County can make a valid lease on said
land, and under what conditions."

In answer to our request for additional information
as to the purpose for which the county acquired the twenty-five
acres of land in question which is sought to be leased to the
Country Club, and for what purpose the land is now being used,
you replied as follows:

"The county did not purchase the twenty-five
acres, that is, they did not pay for same. As
you will see by referring to a copy of the deed
I enclosed you, stated that the consideration was
paid by the State of Texas, but the land was con-
veyed to Menard County and I suppose it was a gift
from the State of Texas. Now the purpose of the
purchase was for the restoration of the San Saba
Mission, as at one time this twenty-five acres was
supposed to be the site of the old Mission, but at
the time of the purchase the only evidence was a
pile of rock. Some time after the purchase, the
Mission was restored. Who furnished the funds for
the restoration I have not been able to ascertain,
but I suppose it was by private donations, and also
I was under the impression at the time of the pur-
chase that the money was furnished by some indivi-
duals or perhaps the Centennial Funds by the State
of Texas.

"The county is now using this property, but
there is now located a golf course on it and, I
think, soon after the restoration of the Mission
the County did undertake to have a caretaker, but
the State does not take care of the property and
the County will not, and if the property is not
cared for, or the Mission improved or repaired,
it will soon be again a pile of rocks."

From the facts submitted in your letters, and an ex-
amination of the deed you enclosed, reciting payment of $3,200
consideration by the State of Texas with a conveyance of the
25 acres to Menard County, there is a serious question as to
the title of Menard County to this property.

We have made inquiries of the State Board of Parks,
the Comptroller of Public Accounts and the State Board of Con-
trol relative to the purchase in 1936 of the above-described

property. The only information we have so far been able to secure is that upon authority of the Commission of Control for Texas Centennial Celebrations the State Board of Control allocated $11,800 in 1936 for the purpose of purchasing, improving and restoring the San Saba Mission. This fund was supplemented by $500 from Menard County.

It would therefore appear that the property in question was purchased by the State of Texas through the Board of Control, such fact appearing also from the recitation in the deed that the consideration received by the grantors for such property was paid by the State of Texas.

We are unable to find any reason or authority why the habendum clause of such deed of conveyance should read so as to convey the property to Menard County, since the property was purchased by the State, and there is no showing that the State intended or had authority to make a donation of the property to Menard County or authorized any board, agency or official to make such donation.

In our opinion, in regard to the title of the State or of Menard County to the property, there is, at the least, a resulting trust in favor of the State of Texas for the purpose of designating the property as an historical monument. The Texas Supreme Court in the case of Conley v. Daughters of the Republic, 156 S. W. 197, held in a similar situation where the State bought land for use as an historical monument and then conveyed same to a corporation organized for charitable and benevolent purposes the corporation became a trustee of the State with power only to maintain the property in good order and repair. But, said the Court, "no title passed to the corporation, nor did any authority vest except that expressed or implied by the terms of the law".

A reference to Art. 6144c, V. A. C. S., (Acts 1935, 44th Legislature, Ch. 174) reveals that the legislature appropriated $3,000,000 "to be expended for the purpose of creating and conducting celebrations commemorating the heroic period of early Texas History". The term "celebration", according to Section 4 of the above mentioned Act included "the restoring of all or parts of old houses, forts, Indian villages and other old structures connected with the history of the territory now embraced within the State of Texas . . . the purchasing of suitable tracts of land where necessary for an approved celebration . . . .". The authority for carrying out the purposes of the above act was vested in an agency created and designated by the Legislature as the Commission of Control for Texas Cen-

Honorable Joe P. Flack, page 4

tennial Celebrations, and Section 6 of the Act provided that all expenditures authorized by the Commission shall be expended by the State Board of Control "according to all legal requirements now provided as to the expenditure of funds . . . by said Board of Control".

Section 14 of Art. 6144b, V. A. C. S. (the Act creating the Texas Centennial Commission) provided as follows:

"Sec. 14. All lands and buildings purchased by the legislative appropriations and all net profits that may be acquired by said Commission shall be turned over to the State of Texas within two years from the close of the Texas Centennial celebration for such disposition as the Legislature may then determine after a final report to the Legislature by the Commission shall have been filed with the Secretary of State, and the Commission shall then be discharged by legislative action, and the corporation dissolved." (Emphasis ours)

So far as we have been able to determine, the Legislature has made no disposition pursuant to the above section of the twenty-five acres which you describe in your request, nor has the Legislature made provision for any board, agency or official to dispose of such land.

From the above quoted legislative enactments it would appear, therefore, that equitable, if not also legal title to the aforesaid twenty-five acres which was evidently purchased by the State of Texas in connection with the Texas Centennial Celebration, is vested in the State. It is therefore our opinion that Menard County has no authority to lease, sell or otherwise dispose of the said twenty-five acres.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By  *W. N. Blanton Jr.*
W. N Blanton, Jr.
Assistant

WNB-bw


APPROVED
OPINION
COMMITTEE
BY *BWB*
CHAIRMAN